JOURNAL ENTRY and OPINION
{¶ 1} This is an appeal of a conviction for menacing by stalking following a bench trial before Cleveland Heights Acting Judge Deane Buchanan. Appellant Clifford Lewis contends there was insufficient evidence to prove he caused anyone to suffer mental distress as defined by R.C. 2903.211(C)(2). We agree and reverse.
 {¶ 2} From the record we glean the following: Lewis and the complainant/victim, Marsha Lewis, were divorced in 1997. Ms. Lewis is the custodial parent of the couple's three teen-age children and Lewis has visitation rights. On Saturday, August 26, 2000, Lewis had the children for the weekend and Ms. Lewis had attended an afternoon wedding and was spending the rest of the weekend at her home with her boyfriend, William Sharpe. On Sunday, beginning about 8:00 p.m., Lewis called his ex-wife's home a number of times, apparently upset over her relationship with Sharpe, and made comments such as: "I thought we could work it out," and "Why are you doing this? Why are you breaking up the family?" Ms. Lewis also claimed he told her that she would "reap what [she] sowed," and that her boyfriend was not going to raise the children. She claimed she told Lewis to stop calling her but he continued to do so. Although unable to remember exactly how many times he called her that night, she stated that he had called three or four times, possibly more, so she stopped answering the phone and went to Sharpe's home. Ms. Lewis indicated that Lewis sounded very upset, she considered the calls threatening and that, considering they had been divorced for almost three years, Lewis's calls seemed very irrational.
 {¶ 3} The following day Ms. Lewis filed a complaint with the Cleveland Heights Police, and Lewis was subsequently charged with one count of menacing by stalking, under R.C. 2903.211, a misdemeanor of the first degree. At bench trial, Ms. Lewis and Cerone Smith, Lewis's friend, testified. Smith claimed that he had been with Lewis at his home from 3:00 p.m. to 12:00 a.m. that Sunday watching television and, although he did not observe him continuously, he did not see him make any phone calls.
 {¶ 4} The judge found Lewis guilty and sentenced him to a $1,000 fine, suspended, six months jail, with all but thirty days suspended, two years probation and costs. A psychological evaluation was also ordered, and Lewis was ordered to have no contact with Ms. Lewis.
 {¶ 5} Lewis asserts three assignments of error.
 {¶ 6} I. THERE WAS INSUFFICIENT EVIDENCE FOR THE COURT TO FIND THE APPELLANT GUILTY OF MENACING BY STALKING.
 {¶ 7} III. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL AT THE CLOSE OF THE CITY'S EVIDENCE.
 {¶ 8} "With respect to sufficiency of the evidence, `"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' * * * In essence, sufficiency is a test of adequacy."[1] Whether the evidence is legally sufficient to sustain a verdict is a question of law.[2]
 {¶ 9} Crim.R. 29 provides:
 {¶ 10} The court on motion of the defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction on such offense or offenses. * * *
 {¶ 11} As stated in State v. Jenks,
 {¶ 12} Proceeding to consider the proper standard of appellate review, where the evidence is either circumstantial or direct, we conclude that the relevant inquiry on appeal is whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. In other words, an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.[3]
 {¶ 13} Accordingly, whether phrased in terms of a Crim.R. 29 motion for acquittal or in terms of a sufficiency of the evidence argument, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[4]
There is no distinction in the particular weight or way of evaluating the evidence, be it direct or circumstantial.[5] "Circumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence."[6]
 {¶ 14} R.C. 2903.211(A) defines the crime of menacing by stalking, in relevant part, as prohibiting the following conduct:
 {¶ 15} No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
 {¶ 16} "Mental distress" is defined as " * * * any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment."[7]
 {¶ 17} When asked if the calls that night had caused Ms. Lewis mental distress, she testified as follows:
 {¶ 18} [Ms. Lewis]: I was upset because my children were with him at the time that he made the calls. And in the past when Clifford and I would have problems, they seemed to catch the brunt of it. They would have to basically — I guess what I'm trying to say, he would take his frustration out on them if something — a place where they needed to go or they wanted to go, maybe they would not be able to go because he was upset with me.
 {¶ 19} [Prosecutor]: How did this cause you distress?
 {¶ 20} [Ms. Lewis]: I was worried about them.
 {¶ 21} This is the totality of the direct evidence presented in this case to demonstrate that Lewis had caused his ex-wife mental distress.
 {¶ 22} "Expert testimony is not necessary to establish that a victim experienced mental distress as a result of the offender's behavior in order to prove an element of menacing by stalking."[8] Rather, it is the function of the trier of fact to determine whether a victim suffered mental distress as a result of the offender's behavior.[9]
Accordingly, while mental distress need not be shown to any level of professional certainty, it must be proven by facts introduced at trial and the reasonable inferences springing from those facts.
 {¶ 23} Since Lewis appeals to this court for reversal of his conviction based on insufficiency of the evidence against him, our inquiry is limited to whether the evidence before the judge, as he sat as the trier of fact, viewed in the light most favorable to the State, would have convinced the average person of Lewis's guilt of each element of menacing by stalking beyond a reasonable doubt.
 {¶ 24} We hold that there was insufficient evidence put forth as a matter of law to prove beyond a reasonable doubt that Lewis's actions caused Ms. Lewis to experience mental distress, as defined by R.C.2903.211. The evidence directly showed that Ms. Lewis was worried that their teenage children would be subject to Lewis's frustration or that they would not be able to "go where they needed to go," because of problems she and Lewis were having. In light of the fact that the couple had been divorced for some time and each was involved in a longstanding relationship, one could indirectly infer some quantity of mental distress caused by Lewis's then seemingly bizarre concern for the welfare of the family unit.
 {¶ 25} As a whole, however, the evidence revealed that Lewis's calls may have caused Ms. Lewis to seek refuge at her boyfriend's home, but nothing more, including acting on the concern she claims to have had for her children, who were in Lewis's home at the time of his calls. It is undisputed that Lewis never made any threat of physical harm to Ms. Lewis or anyone else. We cannot conclude that the evidence of Lewis's three or four calls to Ms. Lewis, the content of the conversations, and her response to them, could have possibly caused a rational trier of fact to believe, beyond a reasonable doubt, that Ms. Lewis had suffered a "temporary, substantial incapacity or mental illness or condition that would normally require psychiatric treatment," because of the calls, as R.C. 2903.211(D)(2) requires. These assignments of error have merit.
Judgment reversed and acquittal entered.[10]
It is, therefore, considered that said appellant recover of said appellee the costs herein.
It is ordered that a special mandate be sent to the Cleveland Heights Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J. CONCURS; TERRENCE O'DONNELL, J., CONCURS INJUDGMENT ONLY.
[1] State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541,1997-Ohio-52 (internal cites omitted).
[2] State v. Robinson (1955), 162 Ohio St. 486, 55 Ohio Op. 388,124 N.E.2d 148.
[3] (1991) 61 Ohio St.3d 259, 273, 574 N.E.2d 492.
[4] See State v. Thompkins (1997), 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541; State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492.
[5] Id. at 272, 574 N.E.2d at 502.
[6] Id.
[7] R.C. 2903.211(D)(2).
[8] State v. Schwab (1997), 119 Ohio App.3d 463, 472, 695 N.E.2d 801;State v. Tichon (1995), 102 Ohio App.3d 758, 763, 658 N.E.2d 16.
[9] Id.
[10]{¶ a} This disposition renders Clifford's second assignment of error moot. See App.R. 12(B). The assignment reads,
 {¶ b} II. THE FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.